Mitchell B. Seidman (MS0894)
Andrew Pincus (AP9295)
**SEIDMAN & PINCUS, LLC**
*Counsel to 1st Constitution Bank*
777 Terrace Avenue, 5th Floor
Hasbrouck Heights, New Jersey 07604
(201) 473-0047

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>DANNY Y. CHEONG,<br><br>Debtor. | Chapter 13<br>Case No. 14-31583-RG |
| 1st CONSTITUTION BANK,<br><br>Plaintiff,<br><br>v.<br><br>DANNY Y. CHEONG,<br><br>Defendant. | Adv. Proc. No. 15- |

**COMPLAINT OBJECTING
TO THE DISCHGARGEABILITY OF DANNY Y. CHEONG'S DEBT TO
1st CONSTITUTION BANK PURSUANT TO 11 U.S.C. §§ 523(a)(4) & 1328(a)(2)**

Plaintiff 1st Constitution Bank ("**Plaintiff**" or, the "**Bank**"), by its undersigned counsel, as and for its complaint against debtor/defendant Danny Y. Cheong ("**Defendant**" or, the "**Debtor**"), alleges as follows:

## PARTIES

1. The Bank is a bank with its principal place of business at 2650 Route 130, Cranbury, New Jersey 08512. The Bank operates fourteen branch banking offices throughout New Jersey including a branch in Fort Lee, New Jersey.

2. The Debtor is an individual residing at 956 Virgil Avenue, Ridgefield, New Jersey 07657.

## JURISDICTION AND VENUE

3. On October 23, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey.

4. By this adversary proceeding, Plaintiff objects to the dischargeability of the Debtor's debt to Plaintiff pursuant to §§ 523(a)(4) and 1328(a)(2) of the Bankruptcy Code. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) because it arises under the Bankruptcy Code. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (I), (J) and (O).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## ALLEGATIONS COMMON TO EACH COUNT

**A.    The Loan**

6. Sometime prior to January 22, 2009, Cheong requested a loan from Plaintiff to fund the acquisition (by entities to be formed by him) of a dry cleaning business which operated at 28 East Main Street, Bergenfield, New Jersey 07621. At the time, Cheong owned all of stock in 48 Cresskill Cleaners, Inc. ("**Cresskill**"), which operated a profitable dry cleaning business in

Cresskill, New Jersey since 2006, and he believed that he could successfully operate another such business in Bergenfield.

7. In or about the time of his communications with Plaintiff, Cheong formed Ebenezel, LLC ("**Ebenezel**") and Bergen Valet Fancy Cleaners, Inc. ("**Bergen Valet**"), and he came to hold all of the membership interests or stock therein, as the case may be.

8. On or about January 22, 2009, Plaintiff extended a loan in the amount of $1,100,000 to Ebenezel and Bergen Valet to: (i) finance the purchase by Ebenezel of the land and building located at 28 East Main Street, Bergenfield, New Jersey (the "**Bergenfield Property**"); (ii) finance the purchase by Bergen Valet of an existing dry cleaning business operating from the Bergenfield Property; and (iii) provide Ebenezel and Bergen Valet with funds for operating expenses.

9. On or about January 22, 2009, Ebenezel and Bergen Valet executed and delivered to Plaintiff a promissory note (the "**Note**") pursuant to which they agreed to repay to Plaintiff the $1,100,000 they borrowed, with interest, as more fully set forth in the Note.

10. To secure its obligations under the Note, on or about January 22, 2009, Ebenezel executed and delivered to Plaintiff: (i) a Mortgage (the "**Ebenezel Mortgage**"), pursuant to which it conveyed to Plaintiff a first priority purchase money security interest in the Bergenfield Property; (ii) an Assignment of Rents, Income, Profits and Leases, pursuant to which it assigned to Plaintiff a collateral interest in all of the income generated by the Bergenfield Property; and (iii) a Security Agreement (the "**Ebenezel Security Agreement**"), pursuant to which it conveyed to Plaintiff a security interest in all of the personal property and business assets of Ebenezel, including, but not limited to its equipment, fixtures, inventory, accounts, instruments, chattel paper and general intangibles. Plaintiff perfected its security interest in the collateral referenced in sub-

paragraph (iii) above by filing a UCC-1 Financing Statement with the New Jersey Department of Treasury on January 28, 2009.

11. To secure its obligations under the Note, on or about January 22, 2009, Bergen Valet executed and delivered to Plaintiff a Security Agreement (the "**Bergen Valet Security Agreement**"), pursuant to which it conveyed to Plaintiff a security interest in all of the personal property and business assets of Bergen Valet, including, but not limited to its equipment, fixtures, inventory, accounts, instruments, chattel paper and general intangibles. Plaintiff perfected its security interest in the collateral referenced herein by filing a UCC-1 Financing Statement with the New Jersey Department of Treasury on January 28, 2009.

12. On or about January 29, 2009, Cresskill executed and delivered to Plaintiff an Unconditional Guaranty (the "**Cresskill Guaranty**"), pursuant to which it unconditionally guaranteed all of the obligations of Ebenezel and Bergen Valet to Plaintiff under the Note.

13. To secure its obligations under the Cresskill Guaranty, on or about January 22, 2009, Cresskill executed and delivered to Plaintiff a security agreement (the "**Cresskill Security Agreement**"), pursuant to which it conveyed to Plaintiff a security interest in all of the personal property and business assets of Cresskill, including, but not limited to its equipment, fixtures, inventory, accounts, instruments, chattel paper and general intangibles. Plaintiff perfected its security interest in the collateral referenced herein by filing a UCC-1 Financing Statement with the New Jersey Department of Treasury on January 28, 2009. The security interest held by Plaintiff in the personal property and business assets of Cresskill is second in priority to a security interest in those assets held by BNB Bank National Association ("**BNB**").

14. On or about January 22, 2009, Cheong and his wife. Hae S. Chung ("**Chung**"), executed a joint Unconditional Guaranty (the "**Cheong/Chung Guaranty**"), pursuant

to which they unconditionally guaranteed all of the obligations of Ebenezel and Bergen Valet to Plaintiff under the Note.

15. To secure his obligations under the Cheong/Chung Guaranty, Cheong executed and delivered to Plaintiff: (i) a mortgage (the "**Ridgefield Mortgage**") on residential real property owned by Cheong at 956 Virgil Avenue, Ridgefield, New Jersey 07657 (the "**Ridgefield Property**"), subordinate in priority to mortgages in favor of Bank of America and Wells Fargo Bank; and (ii) a mortgage (the "**Palisades Park Mortgage**") on residential real property then owned by Cheong at 532 Lincoln Street, Palisades Park, New Jersey 07650 (the "**Palisades Park Property**"), subordinate in priority to two mortgages in favor of Washington Mutual and a mortgage in favor of BNB Bank.

**B.     Default, 2011 Action, Cheong Bankruptcy, and Forbearance**

16. In or about June 2010, Ebenezel failed to pay certain real estate taxes for the Bergenfield Property, which resulted in the "striking off and sale" of the Bergenfield Property to Royal Tax Lien Services, LLC, subject to redemption by Ebenezel, as memorialized in a tax sale certificate dated June 30, 2010, which was recorded with the clerk of Bergen County on August 30, 2010.  Ebenezel's failure to pay the real estate taxes for the Bergenfield Property constituted a default by Ebenezel under the terms of the Note and Ebenezel Mortgage.

17. Subsequently, and in addition to the default by Ebenezel under the Note and Ebenezel Mortgage as noted above, in November 2011, Ebenezel and Bergen Valet defaulted under the terms of the Note by failing to make the monthly payments due thereunder on November 1, 2011 and in certain months thereafter, despite demand by Plaintiff.

18. Additionally, Cresskill, Chung and Cheong defaulted under their respective guaranties by failing to make payments due under the Note on November 1, 2011 and certain months thereafter, as required by their respective guaranties, despite demand by Plaintiff.

19. At or about the time of their defaults, Ebenezel, Bergen Valet, Cresskill and Cheong moved Bergen Valet's dry cleaning machine to the business premises operated by Cresskill. This dry cleaning machine was a critical component of Plaintiff's collateral both because of its independent inherent value and also because it served to generate receivables for Bergen Valet, which receivables also served as Plaintiff's collateral.

20. The transfer of the dry cleaning machinery rendered Bergen Valet unable to independently provide dry cleaning services to its customers. As such, following the transfer of its dry cleaning equipment to Cresskill, Bergen Valet continued operations as a "drop-off" facility only, where customers dropped off their clothing – which was then transported by Bergen Valet and Cheong to Cresskill for cleaning, and then returned to Bergen Valet for pick up by the customers.

21. Shortly after the aforementioned defaults, on November 30, 2011, Cheong filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey. The filing of the petition facilitated an automatic stay of all acts to collect against Cheong for debts owed prior to November 30, 2011 by operation of § 362(a) of the Bankruptcy Code. Accordingly, Plaintiff immediately ceased efforts to enforce its rights against Cheong and property which constituted property of his bankruptcy estate.

22. On or about December 30, 2011, Plaintiff commenced an action in the Superior Court of New Jersey, Law Division, Bergen County, bearing docket number BER-L-69-

12, to collect under the Note, the Cresskill Guaranty and the Cheong/Chung Guaranty (against Chung only), and to foreclose its security interest. Plaintiff also commenced preparations to institute a foreclosure proceeding to enforce the Bergenfield Mortgage.

23. However, in or about January 2012, Cheong, Chong, Ebenezel, Bergen Valet and Cresskill (the "**Cheong Defendants**") requested that Plaintiff forbear from enforcing its rights, and, ultimately, Plaintiff agreed to forbear from enforcing its rights pursuant to a Standstill Agreement, dated February 3, 2012 (the "**Standstill Agreement**"). Specifically, under the Standstill Agreement, Plaintiff agreed to forbear from enforcing its rights under the Note and guaranties, and to refrain from selling the Bergenfield Property at sheriff's sale (but it could continue a foreclosure action with respect to the Bergenfield Property up to the point of sale) provided that the Cheong Defendants:

(a) made modified monthly payments to Plaintiff in the amount of $8,506.00 (including a tax escrow payment in the amount of $1,585.00) for a period of twelve months;

(b) made a payment to Plaintiff in the amount of $3,170.00 on or before February 10, 2012 to cover taxes due on the Bergenfield Property for the first quarter of 2012;

(c) satisfied the outstanding tax lien on the Bergenfield Property (as evidenced by the Tax Sale Certificate referenced above);

(d) transferred the credit card merchant account for Bergen Valet to Plaintiff; and

(e) provided to Plaintiff an income statement and balance sheet for Ebenezel, Bergen Valet and Cresskill on a quarterly basis.

24. In addition, Plaintiff and the Cheong Defendants agreed to meet in mid-December 2012 to: (i) determine whether the Cheong Defendants had been able to pay and/or resolve the outstanding tax lien; and (ii) address whether a further forbearance agreement was agreeable. Finally, under the Standstill Agreement, the Cheong Defendants acknowledged the

validity and enforceability of all of the original loan documents and waived all of their defenses, claims and counterclaims to any action by Plaintiff to enforce any such documents.

25. On or about February 7, 2012, the Bank commenced an action in the Superior Court of New Jersey, Bergen County, Chancery Division, bearing docket no. F-2662-12 (the "**Bergenfield Foreclosure Action**") to foreclose the mortgage on the Bergenfield Property. Pursuant to the Standstill Agreement, however, Plaintiff intended to prosecute the Bergenfield Foreclosure Action only up to the point of sheriff's sale.

26. By Order dated March 16, 2012, the United States Bankruptcy Court entered an Order granting to Cheong a discharge of his debts that arose prior to the commencement of his chapter 7 case, November 30, 2011. The discharge does not extend to debts that accrued after that date, however.

**C.    Default, 2012 Action and Successive Bankruptcy Filings**

27. The Cheong Defendants defaulted under the Standstill Agreement by failing to make the monthly payments due thereunder for October and November 2012.

28. In addition, the Cheong Defendants defaulted under the Standstill Agreement by failing to satisfy or resolve the tax lien against the Bergenfield Property. In fact, on or about September 17, 2012, Royal Tax Lien Services, LLC commenced an action in the Superior Court of New Jersey, Chancery Division, Bergen County, bearing Docket No. F-019823-12, to enforce its tax lien against the Bergenfield Property and to foreclose Ebenezel's right to redeem such property.

29. In addition, the Cheong Defendants defaulted under the Standstill Agreement by failing and/or refusing to provide Plaintiff with balance sheets, income statements,

and other necessary financial information for each of Ebenezel, Bergen Valet and Cresskill, despite demand for same since August 2012.

30. As a result of the foregoing defaults, on or about November 21, 2012, Plaintiff commenced an action (the "**Initial Chancery Division Action**") in the Superior Court of New Jersey, Chancery Division, Bergen County, bearing docket number BER-C-351-12, for breach of the Note, guaranties and Standstill Agreement, to appoint a receiver to Bergen Valet, to enforce Plaintiff's security interest in the assets of Bergen Valet and Cresskill, and for fraudulent transfer and conversion with respect to the transferred dry cleaning equipment.

31. In connection with its commencement of the Initial Chancery Division Action, Plaintiff moved for the appointment of a receiver to Bergen Valet. By Order dated February 20, 2013, the Chancery Division granted Plaintiff's motion, appointing a receiver to Bergen Valet.

32. In addition, Plaintiff resumed its prosecution of the Bergenfield Foreclosure Action.

33. In response to the continued prosecution of the Bergenfield Foreclosure Action, and in an attempt to stay the transition of Bergen Valet's business operations to the receiver, on March 3, 2013 Ebenezel filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

34. By order dated March 25, 2013, the Chancery Division Judge determined that Ebenezel's bankruptcy filing had no impact upon the Court's Order appointing a receiver to Bergen Valet.

35. The trustee of Ebenezel's chapter 7 estate subsequently abandoned all of the estate's interest in Ebenezel's property. Thus title to such property reverted to Ebenezel, subject

to the rights of its creditors holding liens in such property, such as Plaintiff. The trustee subsequently issued a final report and the clerk closed Ebenezel's chapter 7 case on July 11, 2013. Because a corporate entity does not receive a discharge in bankruptcy, and because the trustee did not liquidate any of Ebenezel's property for the benefit of its creditors, Ebenezel's bankruptcy case had no effect on Plaintiff's claims and served no purpose other than to frustrate and impede Plaintiff's rights.

36. Plaintiff thereupon continued in its attempts to enforce the Order appointing a receiver to Bergen Valet, which Bergen Valet resisted.

37. Ultimately, to stay the transition of its property and business to a receiver, on May 20, 2013 Bergen Valet filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. The trustee of its estate also abandoned all of its property, and thus title thereto reverted to Bergen Valet, subject to the rights of its creditors holding liens in such property, such as Plaintiff. The trustee issued a final report on June 26, 2013, and the clerk closed Bergen Valet's chapter 7 case on July 16, 2013. Because a corporate entity does not receive a discharge in bankruptcy, and because the trustee did not liquidate any of Bergen Valet's property for the benefit of its creditors, Bergen Valet's bankruptcy case had no effect on Plaintiff's claims and served no purpose other than to frustrate and impede Plaintiff's rights.

38. In the meantime, Plaintiff determined to enforce its mortgage against the Ridgefield Property. On or about March 22, 2013, Plaintiff commenced an action in the Superior Court of New Jersey, Bergen County, Chancery Division, bearing docket no. F-10382-13 (the

"**<u>Ridgefield Foreclosure Action</u>**") to foreclose the mortgage on the Ridgefield Property, owned by Cheong.[1]

39. In addition, Plaintiff moved in the Initial Chancery Division Action for summary judgment on its claims against Cresskill and Chung for breach of their respective guaranties. By Order dated June 25, 2013, the Chancery Division Judge granted summary judgment in favor of Plaintiff and against Cresskill and Chung in the amount of $1,154,092.00.

40. Ostensibly to stay enforcement of the June 25, 2013 summary judgment and to impede further prosecution by Plaintiff of the Ridgefield Foreclosure Action (even though Chung herself did not hold any interest in the Ridgefield Property), on July 25, 2013 Chung filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. Plaintiff immediately moved for an Order determining that the automatic stay did not apply to Plaintiff's continuing efforts to foreclose the Bergenfield Property or the Ridgefield Property because Chung held no interest in either property. By order dated September 11, 2013, the Bankruptcy Court determined that the automatic stay did not apply to such foreclosure actions and thus Plaintiff was not precluded from continuing the prosecution of those actions.

41. In August 2013, Plaintiff moved in the Initial Chancery Division Action for summary judgment on its contract claims against Ebenezel and Bergen Valet. On September 19,

---

[1] Because the trustee of Cheong's chapter 7 bankruptcy estate had abandoned his interest in the Ridgefield Property, and because the clerk of the Bankruptcy Court closed Cheong's chapter 7 case on January 24, 2013, Plaintiff was no longer stayed from prosecuting an action to enforce its mortgage on the Ridgefield Property (although it was precluded, by operation of a discharge order granted to Cheong on March 16, 2012, from prosecuting any direct claims against Cheong for the underlying debt).

2013, the Chancery Division Judge entered summary judgment in favor of Plaintiff and against Ebenezel and Bergen Valet in the amount of $1,199,323.00.

### D.   Fraudulent Transfer of Cresskill's Business

42.    As will be discussed below, on May 31, 2013, the Debtor knowingly and substantially participated in the fraudulent transfer of Cresskill's assets and business operations to a corporation owned by his brother-in-law (the "**Cresskill Fraudulent Transfer**").

43.    At the time of the commencement of the Initial Chancery Division Action, Cresskill operated a dry cleaning business from the premises located at 48-B Willow Street, Cresskill, New Jersey 07626 under the name "Cresskill Cleaners", which it leased from Sejal Medic, Inc. ("**Sejal**").

44.    On or about April 29, 2013, while the Initial Chancery Division Action was pending and while Plaintiff's claims against Cresskill were outstanding, H. Don Ahn (the same individual who incorporated Cresskill) filed with the State of New Jersey, Division of Revenue a certificate of incorporation for Nissi, Inc. ("**Nissi**").

45.    At all times relevant hereto, 100% of the issued and outstanding stock of Nissi was owned by Paul Lee ("**Lee**"), who is the brother of Chung, the brother-in-law of Cheong, and, at the time of Nissi's formation, was an employee of Cresskill.

46.    Nissi is an insider of Cresskill within the meaning of New Jersey fraudulent transfer law.

47.    On May 23, 2013, Nissi filed a Registration of Alternate Name with the State of New Jersey, Division of Revenue, in which it registered an alternate name as "Cresskill Cleaners & Tailor".

48. On May 31, 2013, without Plaintiff's knowledge or consent, Cresskill surrendered its lease and security deposit to Sejal, which then assigned the lease to Nissi.

49. On or about May 31, 2013, also without Plaintiff's knowledge or consent, Cresskill transferred all of its tangible and intangible assets and business operations, valued as a going concern at $450,000, either directly (or indirectly through Sejal) to Nissi.

50. Cresskill received no consideration in exchange for the transfer of all of its tangible and intangible assets (including its lease) and business operations.

51. As noted above, on June 25, 2013, Plaintiff obtained summary judgment against Cresskill in the amount of $1,154,092.00.

52. By reason of the assignment of the lease and the transfer of the assets and business, Cresskill has no assets with which it may satisfy, in whole or in part, the judgment in favor of Plaintiff.

53. Nissi currently operates a dry cleaning business from the premises 48-B Willow Street, Cresskill, New Jersey 07626 under the name "Cresskill Cleaners & Tailor."

54. Plaintiff first discovered the purported cessation of Cresskill's business operation on June 24, 2013, upon its examination of Danny Cheong and the first meeting of creditors in the chapter 7 case of Bergen Valet.

55. Thereafter, Plaintiff moved in the Initial Chancery Division Action for leave to amend its complaint to assert additional claims against Cresskill and new claims against Sejal, Nissi and Lee with respect to the transfer, and also moved for the appointment of a receiver to Cresskill for the purposes of protecting and removing Plaintiff's collateral. By Order dated August 30, 2013, the Chancery Division Judge granted Plaintiff's motion and appointed a receiver to Cresskill with the right to collect and remove Plaintiff's collateral.

56. On or about September 3, 2013, Plaintiff filed an amendment to its complaint in the Initial Chancery Division Action which included claims related to the transfer of Cresskill's business.

57. Through subsequent motion practice in the Initial Chancery Division Action, and by order dated October 25, 2013, the Chancery Division Judge determined that certain claims included in the new amendment to the complaint against Cheong were not viable, and that all remaining claims contained in the Initial Chancery Division action should be reasserted in a new action to be filed in the Chancery Division.

58. On or about December 23, 2013, the Bank commenced a second action in the Superior Court of New Jersey, Bergen County, Chancery Division, bearing docket no. BER-C-1-14 (the "**Second Chancery Division Action**") to avoid the transfer as fraudulent and to recover the transferred property from the transferees. The defendants in the Second Chancery Division Action are the Debtor, Cresskill, Nissi and Lee.

59. In the Second Chancery Division Action, the Bank asserts claims against the Debtor for tortious interference with the Bank's rights and interests, and for aiding and abetting the fraudulent transfer by Cresskill. Inasmuch as the Debtor's acts which formed the basis for these claims post-dated the date of the Debtor's chapter 7 bankruptcy filing, the claims are not subject to the discharge the Debtor received on Mach 16, 2012.

60. Specifically, in the Fourth Count of the complaint in the Second Chancery Division Action (the "**Second Chancery Complaint**"), the Bank asserts that the Plaintiff holds an interest in the personal property, business assets, and accounts of Cresskill (the "**Cresskill Collateral**"), by virtue of its perfected security interest therein, and holds an immediate right to possession thereof by virtue of the Cresskill Security Agreement and its rights under N.J.S.A.

12A:9-609. Plaintiff further asserts that it holds contractual rights with respect to the Cresskill Collateral pursuant to the Cresskill Security Agreement and that the Debtor and others interfered with Plaintiff's property and contractual rights by improperly exercising dominion and control over the Cresskill Collateral, and orchestrating the transfer thereof to Nissi. Plaintiff further asserts that the interference by the Debtor and others with Plaintiff's property and contract rights was intentional and malicious, in that it was effected without justification or excuse and that Plaintiff has suffered damages as a result of such tortious interference in that Plaintiff has been deprived of its collateral. Plaintiff avers that by reason of the foregoing, Plaintiff is entitled to recover compensatory, consequential and punitive damages from the Debtor and others in an amount to be determined at trial, plus pre- and post-judgment interest, attorneys' fees and expenses and costs of suit.

      61. In the Fifth Count of the Second Chancery Complaint, Plaintiff contends, *inter alia*, that the fraudulent transfer by Cresskill of all of its assets and business operations to Nissi was a wrongful act and that the Debtor and others had knowledge of Cresskill's fraudulent transfer of its assets and business operations to Nissi. By orchestrating the surrender of Cresskill's lease to Sejal and the subsequent assignment thereof to Nissi, and by orchestrating the transfer of all of Cresskill's assets to Nissi for no consideration, Cheong knowingly and substantially participated in the fraudulent transfer of Cresskill's assets and business operations to Nissi. Based on the foregoing, Plaintiff is entitled to recover compensatory, consequential and punitive damages from the Debtor in an amount to be determined at trial, plus pre- and post-judgment interest, attorneys' fees and expenses and costs of suit.

**FIRST COUNT**

(for judgment denying the dischargeability of the Debtor's debt to Plaintiff
pursuant to 11 U.S.C. §§ 523(a)(4) & 1328(a)(2))

62. Plaintiff repeats and realleges the allegations above as if fully set forth at length herein.

63. At the time of the Cresskill Fraudulent Transfer, the Debtor was the sole owner and president of Cresskill.

64. At the time of the Cresskill Fraudulent Transfer, Cresskill was insolvent.

65. By virtue of Cresskill's insolvency, the Debtor owed a fiduciary duty to the creditors of Cresskill, including Plaintiff.

66. In breach of that fiduciary duty, the Debtor: (i) improperly exercised dominion and control over the Cresskill Collateral and orchestrated the transfer thereof to Nissi; (ii) orchestrated the surrender of Cresskill's lease to Sejal and the subsequent assignment thereof to Nissi and orchestrated the transfer of all of Cresskill's assets to Nissi for no consideration; (iii) knowingly and substantially participated in the fraudulent transfer of Cresskill's assets and business operations to Nissi; and (iv) abandoned, transferred and/or destroyed valuable assets of Cresskill (and collateral of Plaintiff).

67. By virtue of the foregoing, Debtor engaged in defalcation while acting in a fiduciary capacity.

68. Accordingly, Plaintiff is entitled to judgment denying the dischargeability of the debt owed by the Debtor to Plaintiff pursuant to §§ 523(a)(4) and 1328(a)(2) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff demands judgment:

(a) denying the dischargeability of the debt owed by the Debtor to Plaintiff pursuant to §§ 523(a)(4) and 1328(a)(2) of the Bankruptcy Code; and

(b) granting Plaintiff such other and further relief as may be just and proper.

Dated: February 2, 2015

**SEIDMAN & PINCUS, LLC**
*Counsel to 1st Constitution Bank*

By:     /s/ Mitchell B. Seidman
Mitchell B. Seidman (MS0894)
Andrew Pincus (AP9295)
777 Terrace Avenue, 5th Floor
Hasbrouck Heights, New Jersey 07604
Tel.  (201) 473-0047
Fax.  (201) 288-7009